This is an accelerated calendar appeal. Appellants, John J. Martin and Frances A. Martin, appeal the judgment of the Lake County Court of Common Pleas which denied their Civ.R. 60(B) motion for relief from judgment. Appellee, The Huntington National Bank, has filed an answer brief. For the reasons which follow, we affirm the judgment of the trial court.
On May 7, 1997, appellee filed a complaint against appellants on a cognovit guaranty in the trial court seeking to hold appellants personally responsible for certain loans extended by appellee to Euclid Motor Rebuilding, Inc. ("EMR"). Appellant John Martin was the President of EMR, and he and his wife, appellant Frances Martin, had previously signed a guaranty agreement entitled "Continuing Guaranty Unlimited" on April 13, 1995 to induce appellee to loan EMR the amount of $185,000.
After EMR filed for Chapter 11 bankruptcy, appellee filed the subject complaint against appellants personally to recover the sum of $174,833.83 in unpaid principal, $7,451.18 in accrued interest, and $712.24 in late fees, for a total of $182,997.25 as of April 29, 1997, together with continuing interest on the sum of $174,833.83 from April 29, 1997 at the rate of ten and a half percent per annum.[1]
By virtue of a warrant of attorney contained in the cognovit guaranty, an answer was filed confessing judgment in favor of appellee. The trial court thereafter entered judgment against appellants on May 7, 1997.
Approximately nine months later, on February 3, 1998, appellants filed the subject Civ.R. 60(B) motion in the trial court. In affidavits attached to their motion, appellants conceded that on April 13, 1995, John Martin, in his capacity as President of EMR, executed a commercial loan note in the amount $185,000 in favor of appellee. The interest rate on this loan was a variable rate equal to one and one-half percentage points in excess of the prime commercial rate. The principal sum and any accrued interest on this loan was due and payable sixty days after April 13, 1995.
On June 12, 1995, John Martin, again in his capacity of President of EMR, executed an U.S. Small Business Administration Note in favor of appellee in the amount of $185,000. Although not expressly stated in Martin's affidavit, it would appear that this second note was a restructuring of the previous unpaid note of April 13, 1995. The terms of the June 12, 1995 note differed from the terms of the April 13, 1995 note in that EMR was required to pay appellee the sum of $2,202 per month, plus interest at the rate of ten and one-half percent per annum for a period of seven years.
Although both appellants conceded in their affidavits that they jointly executed a personal guaranty of the April 13, 1995 note, they alleged that they did not personally guarantee the subsequent June 12, 1995 note.[2] According to appellants, a novation occurred whereby the June 12, 1995 note extinguished their earlier personal guaranty.
The trial court summarily denied appellants' motion without a hearing on March 13, 1998. Appellants perfected a timely appeal, asserting two assignments of error:
 "[1.] THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE DEFENDANTS' MOTION FOR RELIEF FROM JUDGMENT SINCE THE JUDGMENT ENTRY WAS NOT BASED UPON THE PLEADINGS, WAS NOT BASED UPON THE APPLICABLE OHIO LAW AND WAS NOT BASED UPON ANY SPECIFIC FINDINGS OF FACT.
 "[2.] THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO HOLD A HEARING ON THE DEFENDANTS' MOTION FOR RELIEF FROM JUDGMENT."
In the first assignment of error, appellants allege that they presented a meritorious defense entitling them to relief from the cognovit judgment. As previously indicated, appellants believe that they did not personally guarantee the June 12, 1995 note because a novation occurred to relieve them of personal responsibility for the $185,000 loan.
Generally, the requirements for the granting of relief under Civ.R. 60(B) are less stringent for a cognovit judgment as opposed to a traditional judgment. In order for a trial court to grant relief from a traditional judgment pursuant to Civ.R. 60(B), the moving party must demonstrate each of the following: (1) that the party has a meritorious defense or claim to present if relief is granted; (2) that the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) that the motion is made within a reasonable time and where the grounds of relief are Civ. R. 60(B)(1), (2), or (3), not more than one year after judgment.GTE Automatic Electric v. ARC Industries (1976), 47 Ohio St.2d 146, paragraph two of the syllabus.
However, in the case of a cognovit judgment entered by confession upon a warrant of attorney without prior notice to the defendant, the timely assertion of a valid defense to all or part of the claim constitutes grounds for relief. Keeney v.Derrick (Dec. 22, 1995), Lake App. No. 95-L-068, unreported, 1995 Ohio App. LEXIS 5718; Meyers v. McGuire (1992), 80 Ohio App.3d 644,646; Natl. City Bank v. Reat Corp. (1989), 64 Ohio App.3d 212,215; Matson v. Marks (1972), 32 Ohio App.2d 319,323. Appellants concede that the motion must still be timely filed. See Keeney at 3; Meyers at 646, Natl.City Bank at 215. See, also, GTE.
Here, appellants failed to present any operative facts indicating that their novation theory constituted a meritorious defense to any part of appellee's claim against them. A novation is generally understood as a mutual agreement among all parties concerned for the discharge of a valid existing obligation by the substitution of a new valid obligation on the part of the debtor or another, or a like agreement for the discharge of the debtor to his creditor by substitution of a new creditor. See, generally, 18 Ohio Jurisprudence 3d (1997) 204-205, Contracts, Section 283.
In the case at bar, appellants failed to articulate exactly how the alleged novation operated to extinguish their personal guaranty of the $185,000 loan to EMR. Nevertheless, even if we accept for the sake of argument the proposition that the June 12, 1995 note extinguished EMR's obligations to appellee under the earlier April 13, 1995 commercial loan note, which obligations were then reincurred in the form of the June 12, 1995 note, there is no reason to believe that the June 12, 1995 note extinguished appellants' obligation to guarantee personally the $185,000 loan.
On this point, we note that the continuing guaranty was an agreement separate and distinct from EMR's loan agreements with appellee.
We further note that the plain language of the April 13, 1995 guaranty reveals that appellants signed a continuing, unlimited guaranty by which appellants agreed to be personally liable in the event that EMR defaulted on the $185,000 loan, regardless of whether the first loan agreement of April 13, 1995 was extinguished and reincurred in the June 12, 1995 loan agreement. The pertinent portions of the guaranty read as follows:
 "For the purpose of inducing The Huntington National Bank * * * to lend money or advance credit to, or renew, extend or forbear from demanding immediate payment of the Obligations of Euclid Motor Rebuilding, Inc. * * * the undersigned [appellants] * * * hereby unconditionally guarantee the prompt and full payment to Bank when due, whether by acceleration or otherwise, of all Obligations of any kind for which [EMR] is now or may hereafter become liable to Bank in any manner.
 "* * * The word 'Obligations' shall include, BUT NOT BE LIMITED TO, all indebtedness owed by [EMR] to Bank by reason of credit extended or to be extended to [EMR] in the principal amount of $185,000.00 pursuant to one or more instruments of indebtedness and related loan documents.
"* * *
 "* * * This Guaranty is a continuing guaranty, and, in addition to covering all present Obligations of [EMR] to Bank, will extend to all future Obligations of [EMR] to Bank, and this whether such Obligations are reduced or entirely extinguished and thereafter increased or reincurred. * * *" (Emphasis added.)
Indeed, this last clause of the guaranty reveals that the guaranty was expressly intended to survive any novation of the April 13, 1995 agreement. As such, appellants remained personally liable to answer for EMR's debts when it ultimately defaulted on its payments to appellee.
Finally, we note that the motion was untimely as appellants gave no indication why they waited nine months to challenge the cognovit judgment. Appellants' first assignment of error is without merit.
In the second assignment of error, appellants assert that the trial court abused its discretion by denying their Civ.R. 60(B) motion without a hearing. This argument is also without merit because, for the reasons stated in the first assignment of error, the plain language of the pertinent documents revealed that appellants failed to present a meritorious defense to appellee's claim. See Kay v. Marc Glassman, Inc. (1996),76 Ohio St.3d 18; Adomeit v. Baltimore (1974), 39 Ohio App.2d 97; accord Kasputis v. Blystone (Apr. 20, 1990), Ashtabula App. No. 88-A-1416, unreported, 1990 Ohio App. LEXIS 1494. Appellants' second assignment of error is also without merit.
In light of the foregoing analysis, the judgment of the trial court is affirmed.
 ------------------------- JUDGE JUDITH A. CHRISTLEY
FORD, P.J., O'NEILL, J., concur.
[1] Although appellee also sought and obtained recovery from appellants in regards to another loan to EMR, appellants only take issue in the instant appeal with their responsibilities in relation to the $185,000 loan. As a result, we will limit our discussion to the same.
[2] As security for payment of the note in the event of EMR's default, appellants gave the bank a security interest in their residence located in Mentor, Ohio.